UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| RHONDA JONES, <br> BRITTANY DIXON, <br> JAMIE LAWS, <br> JASMINE LAWS-HORD, and <br> VERONICA LEE, <br><br> Plaintiffs, <br><br> v. <br><br> VIVIANT CARE MANAGEMENT LLC, <br> GLEN OAKS HEALTHCARE LLC, <br> POLLAK INNOVATIVE MANAGEMENT <br> PARTNERS LLC, <br> SAMUEL GOLDNER, and <br> DOES 1-3, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No.:  4:23-cv-34-TAV-SKL <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER

This civil matter is before the Court on motions to dismiss by defendant Pollak Innovative Management Partners LLC ("Pollak") [Docs. 11, 26].  Plaintiffs responded [Doc. 29], and Pollak replied [Doc. 35].  Accordingly, the motions are ripe for review.  *See* E.D. Tenn. L.R. 7.1(a).  For the reasons set forth below, the first motion to dismiss [Doc. 11] is **DENIED as moot**, and the second motion to dismiss [Doc. 26] is **DENIED**.

I. **Procedural History & Pollak's First Motion to Dismiss**

Plaintiffs filed their complaint on August 30, 2023 [Doc. 1].  Pollak moved to dismiss the complaint [Doc. 11], and plaintiff filed an Amended Complaint [Doc. 16]. Pollak then moved to dismiss the Amended Complaint for failure to state a claim under

Rule 12(b)(6) of the Federal Rules of Civil Procedure [Doc. 26]. Plaintiffs bring the following claims against Pollak: race discrimination, racial harassment, and retaliation, in violation of 42 U.S.C. § 1981 and the Tennessee Human Rights Act; and retaliatory discharge, in violation of the Tennessee Public Protection Act [Doc. 16, pp. 15–19].

Although an amended complaint renders the prior complaint a nullity, a previously filed motion may still be considered, to the extent that the same alleged defects are contained in the amended complaint, *see Yates v. Applied Performance Techs., Inc.*, 205 F.R.D. 497, 499–500 (S.D. Ohio 2002) ("If . . . the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading" (internal quotation marks omitted)), the Court, in its discretion, may also deem previously filed motions to be moot. *See Glass v. The Kellogg Co.*, 252 F.R.D. 367, 368 (W.D. Mich. 2008) (stating that when an original complaint has been superseded, any motion to dismiss the claims in the original complaint is moot).

In this case, the Court finds it appropriate to deny Pollak's first motion to dismiss [Doc. 11] as moot in light of plaintiffs' filing of the Amended Complaint and Pollak's filing of a renewed motion to dismiss the Amended Complaint.

**II.     Factual Allegations**

Defendant Viviant Care Management LLC ("Viviant Care") owns and operates six skilled nursing facilities in Tennessee and North Carolina [Doc. 16 ¶ 7]. Defendant Glen Oaks is a wholly owned subsidiary or affiliated corporate entity of Viviant Care (together, the "Viviant Entities") that operates a nursing home facility in Shelbyville, Tennessee (the

2

Case 4:23-cv-00034-TAV-SKL    Document 43    Filed 06/10/24    Page 2 of 14    PageID #: 306

"Facility") [*Id.* ¶ 8].  Pollak specializes in providing culinary, housekeeping, and linen services to healthcare facilities [*Id.* ¶ 9].  On or around July 12, 2022, Pollak contracted with the Viviant Entities to provide various services at the Facility [*Id.* ¶ 21].

Plaintiffs worked at the Facility from March 2022 through July and August 2022 [*Id.* ¶¶ 25–32, 61, 67, 75–76, 81, 87].  Plaintiffs Laws-Hord, Lee, and Dixon worked as housekeepers, plaintiff Laws was a laundry attendant, and plaintiff Jones was a clinical nurse educator [*Id.*].  Plaintiffs are all African American except for plaintiff Dixon, who is white [*Id.* ¶ 26].  Initially, plaintiffs were hired by the Viviant Entities and managed by their personnel, including Facility Administrator Heidi Shirley, Human Resources Director Jennifer Ingram, and Laundry and Housekeeping Supervisor Shauna-Lewis Taylor [*Id.* ¶ 33].  Plaintiffs allege that all three management personnel engaged in race-based discriminatory and retaliatory conduct toward plaintiffs, resulting in their discharge or constructive termination [*Id.* ¶¶ 36–37, 40–42, 46, 68].

The Amended Complaint details the nature of plaintiffs' alleged employment relationship with Pollak under the subheading "Plaintiffs' Joint Employment with Pollak" [*Id.* at 4].  Plaintiffs allege that Pollak "hired, and employed or jointly employed with the Viviant Entities," plaintiffs Dixon, Laws, Laws-Hord and their supervisor, Ms. Lewis-Taylor [*Id.* ¶¶ 21, 73].  Upon Pollak's contracting with the Viviant Entities in July 2022, all laundry, housekeeping, and dietary department employees were required to complete and submit new hire employment applications to Pollak [*Id.* ¶¶ 21–24].  Pollak then offered plaintiffs Dixon, Laws, and Laws-Hord employment with Pollak in their

3

original positions, at the same or reduced hourly payrates, which plaintiffs Dixon, Laws, and Laws-Hord accepted [*Id.* ¶¶ 21, 73].[1] Pollak reduced plaintiff Laws-Hord's hourly pay by $2 [*Id.* ¶ 23]. Upon their hiring, Pollak provided or established new payroll practices, payrates, benefits, identification badges, and an electronic time clock procedure [*Id.* ¶ 23]. And to perform their work, plaintiffs Dixon, Laws, and Laws-Hord used shared equipment and supplies belonging to both the Viviant Entities and Pollak [*Id.*].

Ms. Taylor, supervisor to plaintiffs Dixon, Laws, and Laws-Hord, likewise became an employee or joint employee of Pollak on or about July 12, 2022 [*Id.* ¶¶ 21, 33, 73]. Plaintiffs allege that Ms. Lewis-Taylor participated in racial discrimination and harassment against them, including using racial slurs, while she was employed by the Viviant Entities and Pollak [*Id.* ¶ 46]. While employed by Pollak, Ms. Lewis-Taylor promised plaintiffs Dixon, Laws, and Laws-Hord upon their hiring that Pollak would honor their sign-on, referral, and/or work bonuses that had been promised to them by the Viviant Entities [*Id.* ¶ 74]. Additionally, plaintiff Dixon complained to Ms. Lewis-Taylor that she believed she was being targeted and retaliated against because of her association with and advocacy on behalf of plaintiff Laws [*Id.* ¶ 86].

Meanwhile, the Viviant Entities supervised operations at the Facility, including Pollak personnel, to ensure that safety, quality, and cleanliness were maintained [*Id.* ¶ 22].

---

[1] Although plaintiff Lee was employed as a housekeeper, the Amended Complaint does not allege that she was hired or employed by Pollak like plaintiffs Dixon, Laws, and Laws-Hord. Likewise, the Amended Complaint contains no facts that would give rise to the reasonable inference that Pollak hired or employed plaintiff Jones.

4

The Viviant Entities also developed and controlled certain workplace policies and procedures, including those related to the Facility, security, and employment, which they required Pollak to implement [*Id.*].  Additionally, the Viviant Entities provided training materials to plaintiffs, retained authority to terminate their employment, and established plaintiffs' job descriptions, work schedules, and duties [*Id.*].  Likewise, employees of the Viviant Entities "continued to exert managerial control over Plaintiffs, including the authority to make hiring, firing, and compensation decisions" [*Id.* ¶ 23].

The Amended Complaint alleges that the Viviant Entities maintained those powers as to all plaintiffs, not just plaintiffs Dixon, Laws, and Laws-Hord.  While Pollak "controlled the manner and means of [plaintiffs Dixon, Laws, and Laws-Hord's] work," both the Viviant Entities and Pollak controlled the manner and means of all "Plaintiffs'" work [*Id.* ¶¶ 21, 23].  As to plaintiffs Dixon, Laws, and Laws-Hord, the Amended Complaint broadly alleges that the Viviant Entities and Pollak shared and exercised the ability to (1) hire and fire them; (2) affect their compensation, terms, conditions, privileges, and benefits of employment; and (3) direct and supervise their job performance [*Id.* ¶ 24].

As to benefits of employment, the Amended Complaint alleges that Ms. Lewis-Taylor promised a bonus payment of $150 if employees completed laundry duties at a local laundromat after the Facility's washing machines malfunctioned [*Id.* ¶¶ 50–51].  Although both plaintiffs Dixon and Laws performed the tasks as instructed, only plaintiff Dixon received the bonus, which they allege was plainly discriminatory [*Id.* ¶ 51].  As justification, Ms. Shirley, who was employed by the Viviant Entities, stated that the bonus

5

was in her "discretion" [*Id.*]. The Amended Complaint does not indicate when this incident occurred and whether it occurred while they were employed or jointly employed by Pollak.

The Amended Complaint also alleges that Ms. Shirley, Ms. Lewis-Taylor, and Ms. Ingram "made, influenced, and/or were involved in" defendants' decision to terminate plaintiffs' employment [*Id.* ¶ 80]. Plaintiffs insinuate that Ms. Lewis-Taylor's participation in conversations with Ms. Shirley and Ms. Ingram in the days before and after plaintiffs' termination gives rise to the reasonable inference that Pollak played a role in their termination [*Id.* ¶¶ 68, 71].

### III. Standard of Review

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Although this standard does not require 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "merely consistent with" liability, "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Finally, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). However, the Court need not accept legal conclusions or unwarranted factual inferences as true. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "'A legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citations omitted).

## IV. Analysis

In its renewed motion to dismiss, Pollak argues that the Amended Complaint includes contradictory and conclusory allegations about Pollak's status as plaintiffs' joint employer, thereby warranting dismissal of plaintiffs' Section 1981 claim [Doc. 27, pp. 5–6]. If the Court were to agree and dismiss plaintiffs' Section 1981 claim, Pollak argues

7

against the Court exercising supplemental jurisdiction over plaintiffs' remaining state law claims [*Id.* at 11–12].

Plaintiffs responded in opposition, observing that they do not rely exclusively on the joint employer theory and that they have "unequivocally" alleged that Pollak was the direct employer of at least plaintiffs Laws, Laws-Hord, and Dixon [Doc. 30, pp. 1, 8–9]. In the alternative, they argue that they have plausibly alleged a joint employer relationship [*Id.* at 9].

Section 1981 protects an individual's right "to make and enforce contracts." 42 U.S.C. § 1981(a). The statute further defines the making and enforcement of a contract to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). Section 1981 protects individuals from certain forms of discrimination by their employers. *Edmondson v. Nissan N. Am. Inc.*, No. 3:22-CV-00513, 2023 WL 6368169, at *3 (M.D. Tenn. Sept. 27, 2023). "[T]he same liability may be imposed on an entity that is not a plaintiff's formal employer where the third-party constitutes a 'joint employer.'" *Id.* (quoting *Nethery v. Quality Care Invs., L.P.*, 814 Fed. App'x 97, 102–04 (6th Cir. 2020)).

"Under the 'joint-employer' theory, 'an entity that is not the plaintiff's formal employer may be treated under these doctrines as if it were the employer for purposes of employment laws . . . .'" *Nethery*, 814 F. App'x at 102–03 (quoting *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011)). "Entities are joint

8

employers if they 'share or co-determine those matters governing essential terms and conditions of employment.'" *Id.* at 103 (quoting *EEOC. v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013)). "In determining whether an entity is the plaintiff's joint employer, the major factors include the 'entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance.'" *Id.* (quoting *Skanska*, 550 F. App'x at 256); *see N.L.R.B. v. Centra, Inc.*, 954 F.2d 366, 371 n.2 (6th Cir. 1992) (identifying factors including "supervision of the employees' day to day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, [and] issuance of operating instructions") (quoting *W.W. Grainger, Inc. v. N.L.R.B.,* 860 F.2d 244, 247 (7th Cir. 1988)).

<u>Pollak as a Direct Employer.</u>  Plaintiffs contend that the Amended Complaint does not rely exclusively on a joint employer theory [Doc. 30, pp. 3, 6–9]. They argue that have alleged sufficient facts giving rise to the reasonable inference that Pollak at least directly employed plaintiffs Laws, Laws-Hord, and Dixon at one point in time, with the Viviant Entities as their joint employer [*Id.* at 3, 6–9]. In reply, Pollak claims that is not what is alleged in the Amended Complaint [Doc. 35, p. 2].

The Amended Complaint alleges facts about Pollak's employer status under a subheading entitled "Plaintiffs' *Joint Employment* with Pollak Innovative" [Doc. 16, p. 4 (emphasis added)]. Likewise, that section contains various allegations that either recite (verbatim) or parallel the factors that courts consider in determining whether a joint

9

employment relationship exists [*see id.* ¶¶ 21–24]. Nowhere does the Amended Complaint explicitly state the words "formal" or "direct" employer.

But plaintiffs point to the following statement in the Amended Complaint: "**Pollak Innovative then hired, and employed** or jointly employed with the Viviant Entities" plaintiffs Dixon, Laws, and Laws-Hord [*see id.* ¶ 24 (emphasis added)]. And in support of a direct employment relationship, plaintiffs point to the allegation that Pollak required them to submit new-hire applications directly to Pollak after Pollak contracted with the Viviant Entities in July 2022 to provide services at the Facility [Doc. 30, p. 8 (citing Doc. 16 ¶ 73)]. Pollak then hired plaintiffs Dixon, Laws, and Laws-Hord into the positions they held while employed with the Viviant Entities at the same or reduced hourly rates of pay [Doc. 30, p. 8 (citing Doc. 16 ¶ 73)]. As to plaintiff Laws-Hord, they allege that Pollak reduced her hourly payrate by $2 [Doc. 16 ¶ 23]. Plaintiffs also point to the allegation that Pollak provided them with new identification badges and trained them on how to use its new time clock software [Doc. 30, p. 8].

Based on the facts pled, and assuming them to be true, Pollak may qualify as a direct employer to plaintiffs Dixon, Laws, and Laws-Hord. In so holding, the Court observes that Pollak does not actually challenge the sufficiency of the factual allegations in the Amended Complaint as to this theory.

<u>Pollak as a Joint Employer.</u> As to its status as a joint employer, Pollak first highlights the allegations that Viviant Entities had the power to hire, fire, and discipline all

10

employees and that Pollak shared these power as to plaintiffs Dixon, Laws, and Laws-Hord [Doc. 27, p. 6]. Pollak argues these allegations are contradictory [*Id.*].

Second, as to affecting compensation and benefits, Pollak points to the allegation that Pollak provided and established payroll practices, payrates, benefits, and identification badges for plaintiffs Dixon, Laws, and Laws-Hord [*Id.* at 7 (citing Doc. 16 ¶ 23)]. Pollak believes this is contradictory to the allegation that the Viviant Entities controlled compensation for all plaintiffs [*Id.* (citing Doc. 16 ¶ 23)].

Third, as to supervising day-to-day activities of employees, Pollak submits that the allegation that the Viviant Entities exercised this power as to all plaintiffs contradicts the allegation that Pollak and Vivant Entities both shared the power as to plaintiffs Dixon, Laws, and Laws-Hord [*Id.* at 7–8 (citing Doc. 16 ¶¶ 22, 24)].

Fourth, as to promulgating work rules and conditions of employment, Pollak points to the allegation that the Viviant Entities exercised this power as to all plaintiffs and believes it contradicts the allegation that Pollak and Viviant Care both "exercised control over the manner and means of plaintiffs' work" [*Id.* at 8 (citing Doc. 16 ¶¶ 22–23)].

While recognizing that the above allegations, standing alone, are conclusory, the Court does not construe them as necessarily being contradictory to one another. As plaintiffs observe [Doc. 30, pp. 9–11], the Amended Complaint does not provide that the Viviant Entities exclusively possessed these powers as to plaintiffs Dixon, Laws, and Laws-Hord. Construing these allegations in the light most favorable to plaintiffs (and to the extent that plaintiffs have alleged specific facts in support), the Court finds that they

11

give rise to the reasonable inference that Pollak shared certain powers with the Viviant Entities that related to essential terms and conditions of plaintiff Dixon, Laws, and Laws-Hord's employment.

As Pollak observes, the Amended Complaint contains a number of conclusory allegations. To the extent the Amended Complaint merely recites the factors that courts consider in determining whether a joint employment relationship exists but otherwise alleges no specific facts in support, they will not be counted and are insufficient to overcome the motion to dismiss.[2]

Despite the Amended Complaint's shortcomings, the Court finds, in the alternative to direct employment, that there is sufficient factual detail that Pollak may have jointly employed plaintiffs Dixon, Laws, and Laws-Hord.[3] For example, after Pollak contracted with the Viviant Entities to render culinary, housekeeping, and linen services at the Facility, plaintiffs Dixon, Laws, and Laws-Hord, who initially were employed as housekeepers and a laundry attendant by the Viviant Entities, were required to complete and submit new-hire employment applications to Pollak [Doc. 16 ¶ 21]. Plaintiffs Dixon, Laws, and Laws-Hord then accepted Pollak's offer to employ them in the positions they held while previously

---

[2] For example, paragraph 24 of the Amended Complaint merely recites the factors that courts generally consider in determining whether a joint employer relationship exists, leaving the Court with the task of determining what facts support each [Doc. 16 ¶ 24]. Additionally, the allegation that both Pollak and Viviant Care "exercised control over the manner and means of plaintiffs' work" is hardly specific, and the reference therein to plaintiffs is insufficient to give rise to the reasonable inference that Pollak employed or jointly employed *all* plaintiffs.

[3] The Amended Complaint contains no specific factual allegations as to Pollak's employment, either joint or direct, of plaintiffs Lee or Jones.

12

Case 4:23-cv-00034-TAV-SKL   Document 43   Filed 06/10/24   Page 12 of 14   PageID #: 316

employed with the Viviant Entities at the same or reduced rates [*Id.* ¶ 73].[4] Pollak reduced plaintiff Laws-Hord's pay by $2 per hour [*Id.* ¶ 23].

Likewise, upon hiring plaintiffs Dixon, Laws, and Laws-Hord, Pollak established new payroll practices and electronic time clock procedures and provided them identification badges [*Id.*]. The three plaintiffs also used equipment belonging to both Pollak and Viviant Entities to perform their job duties at the Facility [*Id.*].

Further, the fact that plaintiff Dixon complained to Ms. Lewis-Taylor about discrimination and retaliation while Ms. Lewis-Taylor was employed or jointly employed by Pollak suggests that Pollak acted in a supervisory capacity over her. *See EEOC v. Skanska USA Bldg., Inc.*, No. 210CV02717JPMTMP, 2011 WL 13103437, at *3 (W.D. Tenn. Sept. 20, 2011). Likewise, that Ms. Lewis-Taylor promised plaintiffs Dixon, Laws, and Laws-Hord that Pollak would honor sign-on, referral, and work bonuses that the Viviant Entities promised them [*Id.* ¶¶ 50, 73] suggests that Pollak acted in a supervisory capacity and had some power over these plaintiffs' compensation and benefits. Further, Pollak implemented or adopted certain workplace policies and procedures, as required by the Viviant Entities, leading to a reasonable inference that Pollak at least indirectly controlled or supervised plaintiffs Dixon, Laws, and Laws-Hord [*Id.* ¶ 22]. *See Ali v. Piron, LLC*, No. 17-CV-11012, 2018 WL 1185271, at *5 (E.D. Mich. Mar. 7, 2018).

Altogether, these allegations give rise to the reasonable inference that Pollak had some control over plaintiffs' Dixon, Laws, and Laws-Hord hiring, pay, and other

---

[4] This allegation likewise supports plaintiffs' direct employment theory.

conditions of their employment. The allegations also indicate the interrelation of operations between Pollak and the Viviant Entities at the Facility.

Accordingly, the Court will deny Pollak's motion to dismiss plaintiffs' Section 1981 claim.[5]

## V. Conclusion

For the reasons above, the first motion to dismiss [Doc. 11] is **DENIED as moot**, and the second motion to dismiss [Doc. 26] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE

---

[5] In so holding, the Court need not address Pollak's arguments regarding supplemental jurisdiction of plaintiffs' state law claims against it [Doc. 27, pp. 11–12].